**Steven WELINSKY and Eileen Welinsky, Appellants,**

v.

**RESORT OF THE WORLD D.N.V. d/b/a Maho Beach Hotel & Casino, Appellee.**

**No. 277, Docket 87-7521.**

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1987.

Decided Feb. 18, 1988.

David L. Ganz, New York City (Sheryl Zuckerman, Ganz, Hollinger & Towe, P.C., New York City, of counsel), for appellants.

Aita Jogi, New York City (Joseph W. Conklin, New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, OAKES, and PRATT, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment by the United States District Court for the Southern District of New York, Louis L. Stanton, Judge, dismissing this action for lack of *in personam* jurisdiction over the defendant, a Netherlands Antilles hotel. Because on the thin record before us we think that the plaintiffs have made a prima facie showing that the hotel was doing business in New York through its local booking agent, Sea & Sun Resorts, Ltd. (an agent wholly owned by several St. Maarten hotels including the defendant, with the ability to confirm reservations instantaneously), we believe the defendant was amenable to service of process under N.Y.Civ.Prac. L. & R. § 301. Accordingly, we reverse.[1]

Steven and Eileen Welinsky were vacationing at the Maho Beach Hotel & Casino in St. Maarten during August 1984, while awaiting the birth of their first child. On August 20 a fire occurred at the hotel, which the Welinskys claim caused them physical and psychological injuries and caused a birth defect in their child. The Welinskys, New Jersey residents, had arranged their vacation through Ferrante Travel, in Palisades Park, New Jersey, and claim that Ferrante, rather than dealing directly with the defendant hotel, arranged their stay through Sea & Sun Resorts, Ltd., located at 630 Fifth Avenue, New York, New York. It appears from the record that Sea & Sun Resorts, to quote its manager, "is a marketing name for a group of individual hotels which are owned by separate independent companies which have combined for promotional and advertising purposes, sharing the costs." Resort of the World, N.V., doing business as Maho Beach Hotel & Casino, is one of the several independent hotels. Sea & Sun markets space at the various hotels, including the Maho Beach, and takes requests for space. The affidavit of Steven Welinsky was to the effect that Sea & Sun confirmed their

---

**1.** Appellees also argue that service and venue were improper. Because the district court did not rule upon these issues in the order appealed from, we express no opinion about them.

reservations without first conferring with the hotel. An affidavit obtained from a licensed travel agent, the owner-operator of First Call Travel in New York City, indicates that she has obtained reservations at Maho Beach from Sea & Sun with immediate confirmation over the telephone and with prompt confirmation by mail; reservations are not made on "a request basis," which would have indicated to the independent travel agent that confirmation from the hotel was required. The written confirmation, on a Sea & Sun Resorts, Ltd., form, indicates the name of the hotel, the arrival and departure dates, the airline and flight number, the names of the clients, the accommodations and rates, and the deposit amount and due date.

## DISCUSSION

There is no doubt that a nonresident is subject to jurisdiction in New York, pursuant to N.Y.Civ.Prac. L. & R. § 301, if it is " 'engaged in such a continuous and systematic course of "doing business" [in the state] as to warrant a finding of ... "presence" in this jurisdiction.' " *Beacon Enter. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983) (quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 429 (1964)). The leading New York case [2] dealing with hotels is *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). There the New York state court exercised jurisdiction over the Hilton Hotel in London, in a case arising out of the plaintiff's fall in a hotel bathtub. The hotel, a British corporation, was owned by Hilton Hotels International, Inc., a Delaware corporation, which in turn was owned by Hilton Hotels Corp., another Delaware corporation. Both of the Delaware corporations did business in New York and jointly owned another

affiliate, Hilton Credit Corp., which, like Sea & Sun, Ltd., made hotel reservations and could confirm them on behalf of the London hotel. The New York Court of Appeals held that Hilton Credit Corp. was doing business in New York, attributing the activities of Hilton Credit Corp. to the London hotel.[3] By listing the business activities of Hilton Credit Corp. on behalf of the London hotel, including solicitation, public information, and booking reservations, the court concluded that the credit corporation did all the business which the London hotel could have done if it sent its own officials into the state, distinguishing the case from *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). In *Miller* a Florida hotel was found not to be doing business in New York because, among other things, its reservations were subject to confirmation in Florida. Noting Hilton's more extensive contacts with New York, the *Frummer* court held, "[w]hen [a foreign corporation's] activities abroad, either directly or through an agent, become as widespread and energetic as the activities in New York conducted by Hilton (U.K.), [the foreign corporation] receive[s] considerable benefits from such foreign business and may not be heard to complain about the burdens." 19 N.Y.2d at 538, 281 N.Y.S.2d at 45, 227 N.E.2d at 854.

In following *Frummer* this court went a step further in *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir.1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). Judge Lumbard's opinion for the court read *Frummer* to mean "that a foreign corporation is doing business in New York ... when its New York representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representa-

---

**2.** We apply the law of the state in determining whether there has been a proper assumption of jurisdiction by the district court. *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir.1963) (en banc).

**3.** It is difficult to determine whether the Court of Appeals majority decided that the London

hotel and the New York credit corporation were one entity, as its citation to cases involving piercing the corporate veil suggests, or whether the majority held that the Hilton Credit Corp. was acting as an agent for the London hotel. *See* N.Y.Civ.Prac. L. & R. § 301 Practice Commentaries 301.3 at 10 (McKinney 1972).

tive to perform them, the corporation's own officials would undertake to perform substantially similar services." *Id.* at 121. An independent local travel agent who had the power to make and confirm reservations for a Grand Canyon bus tour was held to be performing sufficient agency functions for the defendant bus line to satisfy the doing business test under New York law. *Id.* The court noted that the bus company relied upon this particular travel agent for three-sevenths of its business on the Grand Canyon tour, generating $120,000 a year in bookings confirmed in New York, and held that to be sufficient contact with New York to satisfy due process requirements. *See also Engebretson v. Aruba Palm Beach Hotel & Casino,* 587 F.Supp. 844, 850–51 (S.D.N.Y.1984). *But cf. Kopolowitz v. Deepdene Hotel & Tennis Club,* 464 F.Supp. 677 (S.D.N.Y.1979) (local agent's lack of authority to confirm reservations indicates that travel service is not doing all the business which the corporation could itself do and therefore warrants dismissal for lack of *in personam* jurisdiction).

We recognize, of course, that due process limitations remain of full force and effect. The teachings of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), and the doctrine that minimum contacts having a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, are alive and well. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *Asahi Metal Indus. Co. v. Superior Court,* —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). But asserting jurisdiction over a defendant in a state where the defendant owns a joint venture that provides essential services to an important market certainly comports with "traditional notions of fair play and substantial justice," *see Asahi,* 107 S.Ct. at 1029 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, quoting *Milliken v.*

*Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Our record indicates that the Maho Beach Hotel is a part owner of Sea & Sun, which markets its rooms and services and has the authority to make and confirm reservations without checking with the defendant. This goes well beyond the "mere solicitation of business" referred to in *Miller v. Surf Properties, Inc.,* 4 N.Y.2d at 481, 176 N.Y.S.2d at 322, 151 N.E.2d at 877. *See Gelfand v. Tanner,* 385 F.2d at 121.

While the district court has "considerable procedural leeway" in ruling on a motion to dismiss for lack of personal jurisdiction, *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981), where, as here, "the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Id.* We believe that such a prima facie showing has been made here and that the motion to dismiss should have been denied. We emphasize, however, that this is without prejudice to renewal of the motion if warranted by evidence uncovered through further discovery. But at this stage of the case, the record does not justify dismissal.

Judgment reversed.