**Harold FALIK, Plaintiff,**

v.

**David T. SMITH and James Moscowitz, Defendants.**

**No. 93 Civ. 8267 (RLC).**

United States District Court, S.D. New York.

April 27, 1995.

Alan Lebenbaum, Minneapolis, MN, for plaintiff c/o D. Graham C. Clark, Jr.

Phillips, Lytle, Hitchcock, Blaine & Huber, New York City (Frank Maas, of counsel), for defendant David T. Smith.

## OPINION

ROBERT L. CARTER, District Judge.

*Preliminary Statement*

Plaintiff Harold Falik, a New Jersey resident, is seeking judgment against defendants David T. Smith and James Moscowitz, California residents, for failure to indemnify him, as required by indemnification agreements, for legal expenses he incurred in *Myron Karr v. Emerson Radio*, No. 90 Civ. 1315, a lawsuit instituted in this court. This is a diversity action and the amount in controver-

sy exceeds $50,000, exclusive of interest and costs.

Defendant seeks to have this action dismissed for lack of personal jurisdiction, improper venue, and insufficiency of service of process pursuant to Rule 12(b), F.R.Civ.P., or if the court declines to dismiss, to have this action transferred to the Central District of California or the District of New Jersey pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

Smith is the Chief Executive Officer ("C.E.O.") of D.T. Smith, Inc., a California corporation involved in real estate development. Prior to April, 1985, Smith and Moscowitz formed David T. Smith Associates ("Smith Associates"), a New Jersey general partnership, of which Smith and Moscowitz are general partners. On or about April 1, 1985, Smith Associates and Emerson Financial Services, Inc. ("Emerson Financial"), a New Jersey corporation, formed the New Jersey general partnership, Emerson Equities, in order to organize, manage and sell limited partnership interests in real estate syndications and to be general partner of Emerson Equities. Dolphin Village, one of the limited partnerships was the subject of the *Karr* lawsuit, which involved real property in Florida and which arose out of losses sustained by investors who bought securities which were registered and sold in New York. Plaintiff Falik was named as an individual defendant in *Karr*.

On August 30, 1990 Smith signed an agreement (the "indemnification agreement," "indemnity agreement" or "agreement") with Emerson Financial and Smith Associates stating that Smith personally and as general partner of Smith Associates must indemnify Emerson Financial and its representatives for legal expenses arising out of the *Karr* lawsuit involving Dolphin Village. (Compl., Ex. C, p. 4, agreement § 4(A)(i)). In addi-

tion, paragraph 12B of the agreement states that "[t]he parties ... consent to exclusive jurisdiction and venue in the state and federal courts sitting in the State of New Jersey." *Id.* at 9. Plaintiff Falik is suing defendants for breach of the indemnification agreement.[1]

## I.

■ Smith contends that the action should be dismissed for want of personal jurisdiction. Personal jurisdiction may be contested under Rule 12(b)(2), F.R.Civ.P., and the plaintiff bears the burden of proving that jurisdiction exists. *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983); *Colson Servs. Corp. v. Bank of Baltimore*, 712 F.Supp. 28, 29 (S.D.N.Y.1989) (Carter, J.). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway," *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981), and where the court chooses not to conduct a fullblown evidentiary hearing on the motion, the "plaintiff need only make a prima facie showing that jurisdiction exists ... [and] all pleadings and affidavits are construed in the light most favorable to plaintiff." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985) (quoting cases); *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir.1988); *Marine Midland Bank*, 664 F.2d at 904; *Colson Servs. Corp.*, 712 F.Supp. at 29.

■ In order for the court to have a basis for personal jurisdiction over the defendant in a diversity case, the state statute of the forum court must confer personal jurisdiction over the nonresident defendant, and the exercise of jurisdiction must comport with fed-

1. Falik's complaint is also based on two other indemnification agreements. On or about July 3, 1986, Moscowitz, as general partner of Smith Associates, signed an agreement stating that "Smith Associates hereby agrees to fully indemnify ... [Emerson Equities] ... from all claims ... and suits ... which may arise in connection with the organization, syndication or management of Dolphin Village...." (Compl., Ex. A, indemnification agreement ¶ 3). On or about March 8, 1990, in a letter addressed to Falik,

Moscowitz, as general partner of Smith Associates, confirmed that Smith Associates agreed to indemnify Falik with respect to the *Karr* action, pursuant to their July 3, 1986 indemnification agreement. (Compl., Ex. B, Letter from Moscowitz to Falik of 3/8/90, at 1). These agreements are not discussed as they pertain to Smith Associates and not directly to Smith. Defendant argues only that the court lacks personal jurisdiction over Smith.

eral constitutional principles of due process. *Beacon Enters.,* 715 F.2d at 762 (citing *United States v. First Nat'l City Bank,* 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965)); *Sultanik v. Cobden Chadwick, Inc.,* 94 F.R.D. 123, 124 (E.D.N.Y.1982). When determining whether the court has jurisdiction over nonresidents, sections 301 and 302(a)(1) of the New York Civil Practice Law ("CPLR") are controlling.

### A. General Jurisdiction—CPLR 301

■ A nonresident is subject to personal jurisdiction in any cause of action pursuant to section 301 if he is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [his] 'presence' in this jurisdiction." *Beacon Enters.,* 715 F.2d at 762 (quoting *Simonson v. International Bank,* 14 N.Y.2d 281, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 429 (1964)); *accord Welinsky,* 839 F.2d at 929. The non-domiciliary must be "doing business" in New York " 'not occasionally or casually, but with a fair measure of permanence and continuity,' " *Beacon Enters.,* 715 F.2d at 762 (quoting *Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1962) (citing cases)), and the quality and nature of those contacts must be "sufficient to make it reasonable and just according to traditional notions of fair play and substantial justice that it be required to defend the action" in the state. *Diskin v. Starck,* 538 F.Supp. 877, 880 (E.D.N.Y.1982) (quoting *Laufer,* 449 N.Y.S.2d at 458, 434 N.E.2d at 694) (applying test to corporations); *see also Diskin,* 538 F.Supp. at 880 (test is applied to individuals also).

■ When determining whether a non-domiciliary is doing business in the state, the courts use a "simple pragmatic" test, taking into account the aggregate of the non-domiciliary's activities in the state and considering factors such as whether the non-domiciliary has an office, bank account, property or employees working in the state and whether he solicits business here. *See Hoffritz for Cutlery,* 763 F.2d at 58; *Central Gulf Lines, Inc. v. Cooper/T. Smith, Stevedoring,* 664 F.Supp. 127, 129 (S.D.N.Y.1987) (Kram, J.) (quoting *Bryant v. Finnish Nat'l Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 629, 208 N.E.2d 439, 441 (1965)).

■ Under the above standard, Smith's activities in New York are too limited to justify the court's personal jurisdiction. Smith does not maintain a residence or domicile in New York, nor has he consented to New York's jurisdiction. (Smith Decl. ¶¶ 2, 3). Smith does not personally transact business in New York, nor does he have an office, bank account or property within the state. *Id.* at ¶ 3. Smith is a California resident and C.E.O. of a California corporation involved in real estate development in California. *Id.* at ¶¶ 2, 3.

Falik argues that as general partner of Smith Associates, Smith "regularly and systematically engaged in the sale of securities in the city and state of New York." (Mem. in Opp'n to Defs.' Mot. to Dismiss ¶ 6). However, Falik does not provide any specific evidentiary facts to support this conclusory allegation. "[I]n order for a plaintiff to subject an out-of-state defendant to jurisdiction in New York, it is necessary to do more than put forward an unsupported allegation. The plaintiff must come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York." *Socialist Workers Party v. Attorney Gen. of the U.S.,* 375 F.Supp. 318, 322 (S.D.N.Y.1974) (Griesa, J.); *see Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 91 (2d Cir.1975) ("conclusory allegations of the complaint" and an affidavit that lacked specificity and was unsupported by the record resulted in lack of jurisdiction under 302(a)(1)); *Lamarr v. Klein,* 35 A.D.2d 248, 315 N.Y.S.2d 695, 698 (1st Dept.1970) ("conclusory allegations ... for the plaintiff ... must fail in the face of the positive assertions found in the affidavit of the defendant" under New York long-arm statute), *aff'd,* 30 N.Y.2d 757, 333 N.Y.S.2d 421, 284 N.E.2d 576 (1972).

Falik also asserts that the *Karr* lawsuit arose out of losses sustained by investors who bought securities which were registered and sold in New York by Emerson Equities, of which Smith Associates is a joint venturer. (Mem. in Opp'n to Defs.' Mot. to Dismiss ¶¶ 2, 3, 7). On the other hand, Smith asserts that Smith Associates is a New Jersey gener-

al partnership which does not conduct business in New York. (Smith Decl. ¶ 5). Smith states that

> Smith Associates (1) has no employees residing or domiciled in New York; (2) has not contracted with persons residing in New York to act on its behalf with respect to marketing, distributing or servicing any goods or products; (3) has no branch office or comparable facilities in New York, or telephone listings or mailing addresses in New York; (4) has no bank accounts or other tangible personal or real property in New York; (5) does not direct any advertising specifically toward New York residents, nor advertise any publications that are directed primarily toward New York residents; (6) does not conduct meetings, business conferences or similar functions within the State of New York; or (7) has not consented to jurisdiction in New York by contractually consenting by way of a forum-selection clause or by designating a local agent for service of process.

*Id.*

Even if the court had jurisdiction over Smith Associates, this would not necessarily convey jurisdiction over its general partner Smith. "[J]urisdiction depends only upon each defendant's relationship with the forum.... Regardless of their joint liability, jurisdiction over each defendant must be established individually." *Sher v. Johnson,* 911 F.2d 1357, 1365–66 (9th Cir.1990) (the contacts of the partnership can not be imputed to the partners, while the contacts of the partners can establish jurisdiction over the partnership due to agency relationship); *cf. Rush v. Savchuk,* 444 U.S. 320, 331–333, 100 S.Ct. 571, 578–579, 62 L.Ed.2d 516 (1980); *but cf. Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 981–81 (S.D.N.Y.1992) (Sand, J.) (officer of corporation not shielded from New York jurisdiction solely because his forum contacts are made in this capacity); *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199–202, 522 N.E.2d 40, 44–47 (1988) (discussing when an individual can be subject to jurisdiction when his dealings in forum state were solely in corporate capacity).

Finally, Smith's signing of an agreement stating that he would indemnify the New Jersey corporation Emerson Financial and its representatives for legal expenses arising out of *Karr,* a Southern District of New York case, does not constitute "doing business" in New York under section 301. Smith's contact with the state of New York is indirect, and there is no evidence that he has continually and systematically conducted business here as to warrant a finding of his presence in the state.

### B. Specific Jurisdiction—CPLR 302(a)(1)

■ A nonresident who is not "doing business" in New York under section 301 may be subject to personal jurisdiction pursuant to section 302(a) on a lesser showing of forum contacts if the cause of action arose from those contacts. *Beacon Enters.,* 715 F.2d at 763. Section 302(a)(1) states, in pertinent part, that "[a] court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state ...," and the cause of action is related to the transaction or contract. *Beacon Enters.,* 715 F.2d at 763; *Davis v. Costa–Gavras,* 595 F.Supp. 982 (S.D.N.Y.1984) (Sofaer, J.). This provision complies with constitutional due process. *United States v. Montreal Trust Co.,* 358 F.2d 239, 242 (2d Cir.1966), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966).

■ First, the transacting business test under the New York long-arm statute requires not regular and systematic activities but rather purposeful activity within the state that would result in minimum contacts with the forum state, *Chemco Int'l Leasing, Inc. v. Meridian Eng'g, Inc.,* 590 F.Supp. 539, 541 (S.D.N.Y.1984) (Stewart, J.) (citing *Klein v. E.W. Reynolds Co.,* 355 F.Supp. 886, 888 (S.D.N.Y.1973) (Ward, J.)); *Ferrante Equip. Co. v. Lasker–Goldman Corp.,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 917, 258 N.E.2d 202, 204 (1970) (a single transaction is sufficient), and the protection of the laws of the state, *Impex Metals Corp. v. Oremet Chem. Corp.,* 333 F.Supp. 771, 774 (S.D.N.Y. 1971) (Croake, J.). When making section

302(a)(1) determinations, the court must examine the totality of defendant's activities with the forum state. *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.,* 782 F.Supp. 763, 769 (W.D.N.Y.1991) (Larimer, J.); *Chemco Int'l Leasing,* 590 F.Supp. at 539 (citing cases).

■ Smith's agreement to indemnify Falik does not constitute a business transaction within the state of New York. In *Ferrante Equip. Co.,* 309 N.Y.S.2d at 917–18, 258 N.E.2d at 204–05, the Court of Appeals of New York held that a respondent, who did not transact business in New York but negotiated and executed an indemnity agreement in New Jersey that had an impact in New York, was not subject to New York's long-arm jurisdiction. *See also Media Corp. of America v. Motif Mfg. Co.,* 524 F.Supp. 86, 87 (S.D.N.Y.1981) (Weinfeld, J.) (where third-party defendant entered into indemnity agreement outside of New York but did not transact business in New York, there was no jurisdiction under the state's long-arm statute). Here, Falik does not allege that Smith negotiated or executed the indemnity agreement in New York. In fact, the agreement states that "[t]he parties . . . consent to exclusive jurisdiction and venue in the state and federal courts sitting in the State of New Jersey," (Compl., Ex. C, p. 9, agreement ¶ 12B), and the underlying lawsuit involves indemnifying a New Jersey resident for legal expenses incurred in a dispute involving property in Florida.

■ Second, the indemnification agreement is not considered a contract to supply services within the state of New York. *Media Corp. of America,* 524 F.Supp. at 87 ("The rule in New York is clear that an indemnity agreement alone does not provide a sufficient contact with New York simply because the underlying events that trigger the indemnification occur in New York"); *see also Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.,* 827 F.Supp. 171, 177 (W.D.N.Y.1993) (citing cases); *Birmingham Fire Ins. Co. of Pa. v. KOA Fire & Marine Ins. Co.,* 572 F.Supp. 962, 967 (S.D.N.Y.1983) (Carter, J.); *Birmingham Fire Ins. Co. of Pa. v. KOA Fire & Marine Ins. Co.,* 572 F.Supp. 969, 973 (S.D.N.Y.1983) (Carter, J.); *Cf. Export Credit Corp. v. Diesel Auto Parts Corp.,* 502 F.Supp. 207, 209 (S.D.N.Y.1980) (Owen, J.) (non-resident guarantor's promise to pay an obligation in New York, without more, does not confer long-arm jurisdiction on that guarantor). Here, Smith's only personal contact with the state of New York is his agreement to pay for legal expenses arising out of litigation that was brought in this court.[2] Because the court lacks the statutory authority for personal jurisdiction over Smith pursuant to sections 301 and 302(a)(1), the court need not examine the due process issue nor is it necessary to examine the issue of improper venue or insufficiency of service of process.

## II.

■ Smith argues that the case, if not dismissed, should be transferred to the Central District of California, but if not there, then to the District of New Jersey. It is appropriate to transfer the case to the District of New Jersey for a number of reasons. The case should have been brought in New Jersey in the first place given that Smith has the requisite minimum contacts with New Jersey to establish personal jurisdiction. Smith is a general partner of a New Jersey general partnership, Smith Associates, and he formed another New Jersey general partnership, Emerson Equities. As such, Smith has engaged in continuous and systematic business in New Jersey and purposely availed himself of the benefits and protections of New Jersey's laws. Moscowitz has done the same. Smith has also agreed to the exclusive jurisdiction and venue of New Jersey in the indemnity agreement, putting him on notice that New Jersey is a proper forum.

■ In a diversity case a contractual forum selection clause should be enforced unless it is clearly shown that its enforcement

---

2. It is not necessary to evaluate the cause of action because there is insufficient factual evidence of Smith's transacting or providing services in the state of New York.

would be unjust or unreasonable or it was obtained through fraud or overreaching. *Jones v. Weibrecht*, 901 F.2d 17, 18–19 (2d Cir.1990); *Paribas Corp. v. Shelton Ranch Corp.*, 742 F.Supp. 86, ·90 (S.D.N.Y.1990) (Sweet, J.) (citing cases). The parties provide no evidence that the forum selection clause was obtained through impropriety.[3]

The operative facts of the underlying dispute occurred primarily in New Jersey. Although the lawsuit itself was brought in this court and the property over which the suit was fought is located in Florida, the indemnity suit involved a New Jersey limited partnership, Dolphin Village, formed by a New Jersey general partnership, Emerson Equities. Moreover, Falik, a New Jersey resident, was a defendant in that litigation (*Karr*), for which legal fees are now being sought.

Given that Smith is the general partner of a New Jersey corporation, Smith Associates, and formed a New Jersey general partnership, Emerson Equities, he can not contend that he would be substantially inconvenienced by litigating in New Jersey, *see Sunshine Cellular v. Vanguard Cellular Systems, Inc.*, 810 F.Supp. at 500, even though he is a California resident and C.E.O. of a California corporation dealing with real estate in California. New Jersey is also a convenient forum for Falik because he resides there. Falik's initial choice of forum is New York, but if transfer is required his preference is transfer to New Jersey.

Any witnesses or sources of proof in the case are most likely going to be in New York where the lawsuit occurred, New Jersey where Dolphin Village is based, or in Florida where the property is located. In any case, potential witnesses will most likely be inconvenienced if the case is venued in California. For the sake of efficiency, New Jersey would be a better situs than California because the indemnity suit involves primarily New York and New Jersey actors.

Thus, the court orders that the case be transferred from the Southern District of New York to the District of New Jersey.

IT IS SO ORDERED.

---

**3.** Plaintiff contends that it is a third-party beneficiary of the indemnification agreement and thus exempt from its provisions. However, the court need not determine this issue because jurisdiction is based on more than the forum selection clause. It stands to reason, however, that Falik can not invoke the benefits of the agreement, that is, indemnity, while abdicating its jurisdictional provisions. *See BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir.1993) (third party beneficiary possesses no greater right to enforce agreement than do parties to the contract); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313 (2d Cir.1990) (third party beneficiaries "step into the shoes of the promisee"), *cert. denied*, 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990).

Plaintiff also argues that the indemnification agreement characterizes Smith as a paid surety for Smith Associates. An indemnification agreement shifts the responsibility of paying for legal expenses from one person to another, *Cities Serv. Co. v. Lee–Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir.1985); *Matter of Poling Transp. Corp.*, 784 F.Supp. 1045, 1047 (S.D.N.Y.1992) (Sweet, J.), and "an indemnity claim seeks reimbursement for payment made to a third party," *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 350 (2d·Cir.1986). However, [a] suretyship is a contractual arrangement in which one party, the "surety," agrees to back up the obligation of another, termed the "principal" or "principal debtor," the latter bearing the primary burden of performing for the creditor.... The term "surety" is used in a narrow sense to indicate a direct, primary obligation to pay someone else's debt.... *Rhode Island Hosp. Trust Nat'l Bank v. Ohio Casualty Ins. Co.*, 789 F.2d 74, 77 (1st Cir.1986). The agreement holds Smith personally responsible for indemnifying Emerson Financial's representatives for the legal expenses arising out of the *Karr* lawsuit involving Dolphin Village and does not designate Smith merely as a surety for Smith Associates. Therefore, this argument is unpersuasive.